**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

THOMAS DIAZ, INC.,

     Plaintiff,

       v.

COLOMBINA, S.A.,

     Defendant.

CIVIL NO. 10-1426 (PG)

## OPINION AND ORDER

Pending now before the Court are plaintiff Thomas Diaz, Inc.'s ("TDI" or "Plaintiff") motion for summary judgment (Docket No. 23) and defendant Colombina, S.A.'s ("Colombina" or "Defendant") motion to stay, vacate or modify the arbitration award (Docket No. 29). For the reasons set forth below, the Court **GRANTS IN PART** the Plaintiff's motion for summary judgment (Docket No. 23) and **DENIES** the Defendant's motion to stay, vacate or modify arbitration award (Docket No. 29).

## I. BACKGROUND

Plaintiff Thomas Diaz, Inc. is a corporation organized and existing pursuant to the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Toa Baja, Puerto Rico. Defendant Colombina S.A. is a corporation organized and existing pursuant to the laws of the Republic of Colombia, South America with principal place of business in Cali, Colombia. On May 19, 2010, Plaintiff filed the above-captioned diversity suit pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, seeking the enforcement of an arbitration award against defendant Colombina for the amount of $3,720,359.78, plus costs, expenses, and interests. See Docket No. 1.

In the complaint filed on May 19, 2010, TDI alleges that in a prior case before this Court, Civil Case No. 07-1148(RLA), the parties entered into an Arbitration Agreement on March 30th, 2007 via judicial stipulation. The parties agreed to enter into arbitration in order to address and resolve certain disputes dealing with the cancellation of the parties' distribution agreement, which had been in place for over forty years. See Docket No. 1. The parties selected attorney Angel F. Rossy-Garcia ("Rossy" or "the Arbitrator") to be the Arbitrator in this matter. Mr. Rossy is a retired judge of the Appeals Court and

the Court of First Instance of the Commonwealth of Puerto Rico. By agreement
between the parties, the action was bifurcated in two phases, the first being
a determination of whether there was "just cause" to terminate the relationship
under the Puerto Rico's Dealer's Act, Law No. 75 of June 24, 1964, as amended,
P.R. LAWS ANN. tit. 10, § 278 *et seq.* (hereinafter "Act No. 75"). If just cause
for the termination of the contract between the parties was not found, then, the
second phase would entail the determination of damages, if any, under the
applicable damages provisions of Act No. 75.

        During the first phase of the arbitration proceedings, on April 22, 2009,
the Arbitrator found in favor of TDI, that is, that Colombina did not have just
cause to terminate the commercial relationship between the parties. Colombina
does not challenge this partial award in the proceedings now before this Court.
See Docket No. 29 at page 5.

        After further hearings, on March 31, 2010, the Arbitrator reached a final
arbitration award determining the amount of damages Colombina owed to TDI. The
Arbitrator determined that the Defendant owed Plaintiff the sum of
$3,720,359.78, plus costs, expenses, and interests at the rate set by the Office
of the Commissioner of Financial Institutions as of the date of entry of the
award. The total amount is itemized as follows: (1) $1,854,000 in benefits TDI
failed to obtain in the distribution and sale of the Colombina products;
(2) $1,841,000 in goodwill attributed to the distribution of the Colombina
merchandise; and, (3) $25,360.78 in advertising expenses incurred for the
benefit of the marketing of Colombina products in Puerto Rico. See *Arbitration
Award*, Docket No. 23-3. In addition, the arbitrator awarded TDI the amount of
$127,432.63 for costs and expenses.

        In addition to filing the complaint, on November 2, 2010, the Plaintiff
filed a motion for summary judgment requesting the Court enter an order
confirming the totality of the award granted to TDI and ordering the Defendant
to additionally pay attorney fees and costs in this matter. See Docket No. 23.
Shortly thereafter, Colombina filed a motion to stay, vacate or modify the
arbitration award arguing that the award in question is grossly excessive,
punitive in nature, as well as unsupported by the evidence presented during the
arbitration proceedings. See Docket No. 29. Also before the Court are the
parties' respective oppositions to these motions.

Civil No. 10-1426 (PG)                                                                  Page 3

## II. DISCUSSION

**A.    Motion to Stay, Vacate or Modify Arbitration Award**

   **1. Scope of Review**[1]

   A federal court's review of an arbitrator's decision is "extremely narrow
and exceedingly deferential." Airline Pilots Ass'n, Int'l v. Pan Am. Airways
Corp., 405 F.3d 25, 30 (1st Cir.2005) (quoting Bull HN Info. Sys., Inc. v.
Hutson, 229 F.3d 321, 330 (1st Cir.2000)). "Indeed, it is 'among the narrowest
known in the law.'" Ramos-Santiago v. United Parcel Service, 524 F.3d 120, 123
(1st Cir.2008) (citing Maine Cent. R.R. Co. v. Bhd. of Maint. of Way Employees,
873 F.2d 425, 428 (1st Cir.1989)). "Nevertheless, there are limits to that
deference." Eastern Seaboard Const. Co., Inc. v. Gray Const., Inc., 553 F.3d 1,
3 (1st Cir.2008) (citing Kashner Davidson Sec. Corp. v. Mscisz, 531 F.3d 68, 70
(1st Cir.2008)). Specifically, courts must ensure that arbitration decisions
comply with the exceptions codified in the FAA in actions brought under this
statute.[2] See Kashner Davidson Securities, 531 F.3d at 74 (internal citations
omitted).

   Section 10 of the FAA provides the grounds for vacating awards while
Section 11 lists those pertinent to modifying or correcting an award. In
essence, Section 10 "authorizes vacatur of an award in cases of specified
misconduct or misbehavior on the arbitrators' part, actions in excess of

---

   [1]In its motion to vacate, the Defendant makes the argument in favor of the application
of local law to invalidate the arbitration award. The Plaintiff opposed this argument
claiming the FAA preempts state law. "The Supreme Court has stated that the FAA applies both
in federal and state courts. … In Southland Corp., the Supreme Court held that the FAA
preempts state law; and that state courts cannot apply state statutes that invalidate
arbitration agreements." Colon Vazquez v. El San Juan Hotel & Casino, 483 F.Supp.2d 147, 152
(D.P.R. 2007) (internal citations omitted); see also Hawayek v. A.T. Cross Co., 221
F.Supp.2d 254 (D.P.R.2002) ("The Supreme Court has consistently held that the FAA preempts
any state statutory prohibitions which conflict with the goals and policies of the FAA."),
M & L Power Services, Inc. v. American Networks Intern., 44 F.Supp.2d 134 (D.R.I.1999)
([T]he FAA only preempts state law to the extent that said state law provides lesser
protection for arbitration agreements and awards than does federal law.). Inasmuch as the
grounds for invalidating arbitration awards under the local statute in question, namely, 32
P.R. Laws Ann. tit. 32, § 3222, provide lesser protection to arbitration awards, we find the
same is preempted by the provisions of the FAA.

   [2] In its motion, Colombina contends, among other things, that the Arbitrator acted
with "manifest disregard for the law" and his award should be thus vacated. However, "in
Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 1405, 170 L.Ed.2d
254 (2008), the Supreme Court limited the grounds applicable to vacate arbitration awards
in actions brought under the FAA exclusively to those expressly listed in the Statute."
Horizon Lines of Puerto Rico, Inc., v. Local 1575, International Longshoremen's Association
AFL-CIO, No. 08-1611, 2009 WL 613778, at *3 (D.P.R. March 06, 2009); see also Kashner
Davidson, 601 F.3d at 22. "By so doing the court rejected the "manifest disregard of the
law" standard of review in cases filed under the provisions of the federal arbitration
statute." Horizon Lines, 2009 WL 613778, at *4. Therefore, although Colombina spent a number
of pages arguing its case pursuant to the "manifest disregard of the law" doctrine, the same
shall be disregarded inasmuch as this case is brought pursuant to the provisions of the FAA.

arbitral powers, or failures to consummate the award." UMass Memorial Medical Center, Inc. v. United Food And Commercial Workers Union, 527 F.3d 1, 6 (1st Cir.2008) (internal citations and quotation marks omitted). Section 10(a) specifically allows a court enter an order vacating an arbitration award upon a party's application:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10. "[D]espite these exceptions, great deference remains the general mode of approach to judicial review of arbitral awards." UMass Memorial Medical Center, 527 F.3d at 6.

On the other hand, pursuant to Section 11 of the FAA, a court may instead modify and correct the award in the following enumerated instances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C.A. § 11.

Courts must keep in mind, nevertheless, that "[e]ven if the court is convinced that the arbitrator committed serious error, 'so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, arbitration awards must be confirmed.'" Colon Vazquez v. El San Juan Hotel & Casino, 483 F.Supp.2d 147, 152-153 (D.P.R. 2007) (citing Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC, 319 F.3d 1060, 1064 (8th Cir.2003)).

### 2. Analysis

Puerto Rico's Act No. 75 "governs the business relationship between principals and the locally appointed distributors/dealers for marketing their products. The statute was initially enacted to avoid the inequity of arbitrary termination of distribution relationships once the designated dealer had successfully developed a local market for the principal's products and/or services." Irvine v. Murad Skin Research Laboratories, Inc., 194 F.3d 313, 317 (1st Cir.1999) (internal citations omitted). "The statute provides that 'no principal or grantor may terminate [the principal-sales representative] relationship, or directly or indirectly perform any act that may impair the established relationship, or refuse to renew said contract …, except for just cause.'" IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 445 (1st Cir.2010) (quoting P.R. LAWS ANN. tit. 10, § 279a). "If the principal terminates its commercial relationship with an exclusive sales representative without just cause, it is liable for the damages caused." Brown Forman, 627 F.3d at 445 (quoting P.R. LAWS ANN. tit. 10, § 279c). Act No. 75 "provides one recovery for profits (or benefits, … ) which are lost as a result of the termination of an average distributor while it also provides a separate recovery which … is for profits to be lost after the termination of a distributor who generated good will in the product." Ballester Hermanos, Inc. v. Campbell Soup Co., No. 92-1096, 1993 WL 269656, at *6 (D.P.R. July 07, 1993).  The damage provision of Act No. 75 provides, in pertinent part:

> If there is no just cause for the termination of the sales representation contract, for impairing the established relationship, or for the refusal to renew said contract, the principal shall have executed a tortious act against the sales representative and shall compensate him to the extent of the damages caused to him, which amount shall be fixed by taking into account the following factors:
> …
> (b) The good will of the business, or the part thereof that is attributable to the representation of the merchandise or rendering of the services in question, to be determined taking into account the following terms:
> > (1) The number of years that the sales representative has been in charge of the representation;
> > (2) the present volume of the representation of the merchandise or the rendering of the services in question and the proportion it represents in the business;
> > (3) the Puerto Rican market share represented by said volume;

Civil No. 10-1426 (PG)                                                        Page 6

              (4) any other factor that may equitably help to
              establish the amount of said good will.

              (c) The amount of the benefits obtained from the
              representation of the merchandise or in the rendering of
              services, as the case may be, during the last five (5)
              years, or if less than five (5), five (5) times the
              average of the annual benefits obtained during the last
              years, whichever they are.

P.R. LAWS ANN. tit. 10, § 279c.

As previously stated, the Arbitrator held that TDI was entitled to $1,854,000.00 for the amounts of benefits obtained from the distribution of the Colombian product line during the five years preceding the termination of the agreement. This amount pertains to subsection (c) of § 279c of Act No. 75. In reaching his conclusion, the Arbitrator found that the methodology used by TDI's expert was correct and reasonable and supported by the applicable authorities and caselaw. See *Arbitration Award*, Docket No. 23-3 at page 10. According to Colombina, however, this amount is punitive as opposed to compensatory in nature, excessive, and unsupported by the evidence. See Docket No. 29. From what the Court can make out from the Defendant's motion,[3] the Defendant specifically points out the following errors in the Arbitrator's decision: (a) that Plaintiff's expert disregarded Act No. 75's directive that the calculation take into account the financial data preceding termination, not thereafter, (b) that Plaintiff's expert omitted Colombina's proportionate share of several variable expenses in its profit calculation thereby overvaluing Colombina's profitability; (c) that the goodwill attributed to the Colombina line is unfounded and exaggerated in light of TDI's meager earnings in the years prior to the termination of the distribution contract. See id.

"Law 75 establishes a formula for the indemnification of dealers/distributors in the event of either termination or impairment to the relationship by a principal without just cause. However, Law 75 specifically limits payment 'to the extent of the damages caused [the dealer/distributor].'"

---

[3] The First Circuit has recently stated that courts may "consider waived arguments confusingly constructed and lacking in coherence. … Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Rodriguez v. Municipality of San Juan, No. 09-1769, 2011 WL 5007161, at *4 (1st Cir. October 20, 2011). When making reference to the Arbitrator's Award, the Defendant's motion to vacate (Docket No. 29) is riddled with empty phrases such as "blindly capricious...adoption," "blatant disregard of law," "basic flawed assumption," "such flawed logic," "palpably faulty," "patently absurd and faulty assumption," "draconian windfall of punitive nature," "magical tergiversational twist of...financial realities" among others. The Court had to ferret through the motion in order ascertain the grounds of Defendant's objections to the Arbitrator's award.  Therefore, to the extent the Defendant's arguments were unclear or incomprehensible to this Court, the same are hereby disregarded.

Civil No. 10-1426 (PG)                                                    Page 7

<u>Murad</u>, 194 F.3d at 319 (<u>citing</u> P.R. LAWS ANN. tit. 10, § 278b). "It is clear from
reading this provision that damages will not be automatically conferred in all
cases of termination and/or impairment." <u>Id.</u>

        In <u>Ballester</u>, the parties disagreed, much like here, on the appropriate
accounting method that should be used to calculate average of the annual
benefits. Therein, the plaintiff advanced a method called the "streamline" or
"contribution" approach. Said method "deducts from gross profits only those
expenses which will no longer be incurred after the withdrawal of the terminated
lines — that is, the expenses directly related to the sale by [plaintiff] of …
[the] products." <u>Ballester Hermanos, Inc.</u>, 1993 WL 269656 at *4.

> This method seeks to reflect the loss suffered by
> [plaintiff] by focusing on the loss of the contribution
> made by the [product] to the capital of [plaintiff]. It
> reflects the fact that the fixed expenses of
> [plaintiff], which will still be incurred as the company
> continues to distribute the products of its other
> principals, are absorbed by the other lines. As a
> result, the company suffers a serious decline in its
> efficiency and profitability.

<u>Id.</u> On the other hand, the defendant advanced a method through which all
expenses directly related to the distribution of its product lines, as well as
the percent of all expenses indirectly related and attributable to the
distribution of its product lines were deducted from gross profits to determine
net profits. <u>See</u> <u>id.</u> According to the defendant, "this 'straight' method …
accurately reflects the true profit obtained by [plaintiff] in the distribution
of the [product] lines. This method is advantageous for the defendant because
it deducts a greater range of expenses, thereby reducing the amount of the
plaintiff's net profit and consequently its recovery under the Act." <u>Id.</u> The
court held that although the defendant's approach was not without merit, Act
No. 75 may include the type of recovery sought by the plaintiff in <u>Ballester</u>
inasmuch as the statute "speaks not of 'profits' but of 'beneficios,' which is
translated as 'benefits.' The word for 'profits' in Spanish is 'ganancias' and
has a more limited definition than 'beneficios.'" <u>See</u> <u>id.</u> at *5. The <u>Ballester</u>
court went on to conclude that a single method for calculating lost profits
could not be settled upon because "the companies that seek indemnity under the
Act are too varied, in terms of size and the sophistication of their internal
accounting practices, to settle upon a single method which would accurately
reflect the damages suffered by each." <u>Id.</u> at *5.

        Here, the controversy surrounding the computation of the damages awarded
in § 279c(c) of Act No. 75 is identical to the one before the Court in

Ballester. In the case at hand, the Arbitrator adopted the "streamline" or "contribution" approach advanced by the Plaintiff's expert and grounded its decision on the holdings of Ballester, as well as Goya de Puerto Rico, Inc. v. Rowland Coffee Roasters, No. 01-1119, 2004 WL 5459246 (D.P.R. October 22, 2004) and other authorities on the subject. The Arbitrator went on to calculate the amount of lost benefits pursuant to the methodology he deemed more appropriate and the accounting information that was stipulated by the parties.

With regards to goodwill, this Court held in Ballester that in situations in which the dealer has performed particularly well, Act No. 75 "provides that the dealer may be indemnified for the value of the goodwill associated with the product because of its efforts — that is, the excess value of the product beyond that generated by the manufacturer which is attributable to the marketing, distributing, and other services provided by the distributor." Ballester, 1993 WL 269656 at *5 (citing San Juan Mercantile v. Canadian Transport Co., 108 P.R. Dec. 211 (1978)). "The dealer must be indemnified to the extent that profits which are attributable to its efforts and that it had expected to enjoy will be enjoyed by another company after the dealer is terminated." Id. at *6. The court further stated that:

> The dealer can also suffer additional, consequential losses which affect the good will of the business itself. It can lose clients who shift their purchasing to the entity which has assumed distribution of the lines. It can suffer a resulting decline in reputation. These factors can contribute to the decline in the value of the entity. … The dealer must be indemnified for all of these damages. … The plaintiff is … entitled to be indemnified for the excess profits generated by its efforts which will be enjoyed in the future distribution of the line.

Id.

On this subject, in Goya, 2004 WL 5459246 at *7, this Court held that "[e]xperts utilize different approaches when it comes to computing the value of the goodwill. For example, an expert can employ the 'straight capitalization accounting method', the 'capitalization of excess earnings method,' the 'IRS variation of capitalized excess earnings method' or the 'market value approach.'" Goya, 2004 WL 5459246 at *7.

Herein, the Arbitrator concluded that the capitalization of future benefits approach was a well-acknowledged and accepted method in the field of business valuation and had been validated by the Supreme Court of Puerto Rico in P.R. Oil v. Dayco, 164 P.R. Dec. 486 (2005). As a result, he found it to be

Civil No. 10-1426 (PG)                                                                    Page 9

an appropriate method to apply to the case at bar. See Docket No. 20-1 at pages
12-21.

     In his valuation, the Arbitrator considered all of the relevant elements
set forth in Act No. 75 and the applicable caselaw, namely, the number of years
that TDI had been in charge of the representation of the Colombina products; the
proportion Colombina products represented for TDI; the percent of export sales
Puerto Rico represented for Colombina. The Arbitrator's accepted the Plaintiff's
expert use of the capitalization of future benefits methodology, and thus, went
on to review the procedure and calculations he employed, thereby reaching the
amount in question of $1,841,000 for goodwill lost.

     After carefully reviewing the Arbitrator's award and Defendant's claims
of error, we find that Colombina's arguments fail to persuade this Court that
the enumerated circumstances that justify vacating or modifying an arbitration
award pursuant to the FAA are present in this case. The Arbitrator's reasoning
is plausible and supported by the record, and his findings are founded on valid
principles. Accordingly, we conclude this case "fails to meet the exceedingly
high threshold for judicial interference with arbitral awards." UMass Memorial
Medical Center, Inc. v. United Food And Commercial Workers Union, 527 F.3d 1,
7 (1st Cir.2008). Because "no valid grounds warrant disregarding the
arbitrator's conclusion." Horizon Lines, 2009 WL 613778 at *5, the Defendant's
motion to vacate (Docket No. 29) must therefore be **DENIED.**

**B.    Motion for Summary Judgment**

     Plaintiff filed a motion for summary judgment (Docket No. 23) arguing it
is entitled to judgment as a matter of law and requesting that this Court enter
summary judgment enforcing the arbitration award object of this complaint.
According to TDI, there are no genuine issues as to any material fact. In
addition, TDI requests it be awarded attorney fees. See Docket No. 23. The
Defendant opposed TDI's motion. See Docket No. 37.

     **1. Standard of Review**

     A motion for summary judgment is governed by Rule 56(c) of the Federal
Rules of Civil Procedure, which allows disposition of a case if "the pleadings,
depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment as a matter of law."
See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). A factual dispute
is "genuine" if it could be resolved in favor of either party, and "material"

if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

### 2. Findings of Fact

The following statement of facts is culled from the Plaintiff's statement of material facts (Docket No. 23). Local Civil Rule 56(c) provides that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Moreover, Local Civil Rule 56(e) states that

"[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Inasmuch as the Defendant has failed to submit a separate statement of material facts as contemplated by the Local Rules, we take Plaintiff's facts as true. See Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 45 (1st Cir.2004) ("We have consistently upheld the enforcement of [the District Court of Puerto Rico's local rule], noting repeatedly that 'parties ignore [it] at their peril' and that 'failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.'").

1.    Plaintiff Thomas Diaz, Inc. is a corporation organized and existing pursuant to the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Toa Baja, Puerto Rico.

2.    Defendant Colombina S.A. is a corporation organized and existing pursuant to the laws of the Republic of Colombia, South America with principal place of business in Cali, Colombia.

3.    The parties selected attorney Angel F. Rossy-Garcia to be the Arbitrator in this matter. Mr. Rossy-Garcia, is a retired judge of the Appeals Court and the Court of First Instance of the Commonwealth of Puerto Rico.

4.    The arbitration was held in San Juan, Puerto Rico commencing in 2007. By agreement between the parties, the action was bifurcated in order for the arbitrator to make a determination of responsibility under Act No. 75, and if just cause for the termination of the contract between the parties was not found, then, the second phase for the determination of damages, if any, under the applicable damages provisions of Act No. 75 would be held.

5.    The Arbitrator found that Colombina did not have just cause to terminate the commercial relationship between the parties, as per the partial arbitration award about responsibility entered on April 22, 2009.

6.    The damages phase of the arbitration before the same Arbitrator was held in the month of February 2010.

7.    Both parties presented ample evidence and expert witnesses in order to support their contentions. After the presentation of evidence, the Arbitrator entered the damages award on March 31, 2010. As per

Civil No. 10-1426 (PG)                                                                Page 12

       the arbitration award, Colombina was ordered to pay TDI the sum of
       $3,720,359.78, plus costs, expenses, and interests at the rate set
       by the Office of the Commissioner of Financial Institutions as of
       the date of entry of the award.

8.     The sum awarded by the Arbitror on March 31, 2010 accrues the amount
       of $433.19 daily for interest owed on the principal amount, based
       on the interest rate of 4.25 per cent, per year (4.25%) as set by
       the Office of the Commissioner of Financial Institutions of Puerto
       Rico for judgements entered between January 1, 2010 and July 31,
       2010.

9.     The Arbitrator awarded the amount of $127,432.63 in costs and
       expenses.

10.    According to arbitration rules agreed between the parties, the award
       entered was to be final and binding between the parties. Both
       parties agreed to comply with the arbitration award without delays.

### 3. Analysis

#### a. Confirmation of Award of Arbitrator

Plaintiff TDI seeks confirmation of the arbitration award pursuant to Section 9 of the FAA, 9 U.S.C. § 9. In response, Colombina objects and request a vacatur pursuant to 9 U.S.C. §§ 10-11. In its opposition to the Plaintiff's motion, the Defendant basically rehashed the arguments it set forth in its motion to vacate (Docket No. 29) and generally argued that the arbitrator exceeded his powers and disregarded governing law in his award of damages. See Docket No. 37.

The FAA "supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." Hall Street, 552 U.S. at 581, 128 S.Ct. at 1402 (citing 9 U.S.C.A. §§ 9-11). Section 9 of the FAA states, in relevant part, that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court

in and for the district within which such award was made.
9 U.S.C.A. § 9. Therefore, a Court must either vacate or modify an arbitration award under the limited circumstances set forth in the FAA or confirm an award.

In the case at hand, this Court has already rejected the arguments purported by the Defendant in its request that the arbitration award in question be either vacated or modified. Having done so in the foregoing section, and finding that the Award is final and definite as to the subject matter submitted, the Court must, pursuant to the FAA, enter an order confirming the award as requested by the Plaintiff.

In light of the above, the Court hereby **GRANTS** the TDI's motion for summary judgment (Docket No. 23) and thus confirms the Arbitrator's award.

### b. Attorney Fees

In addition to requesting the confirmation of the Arbitrator's award, TDI also seeks that this Court award attorney fees in its favor. The Defendant, however, fails to address this point in its response.

Puerto Rican law governs the question of fees in diversity actions. See Newell P.R., Ltd. v. Rubbermaid Inc., 20 F.3d 15, 24 (1st Cir.1994). Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure provides that "[i]n the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct." P.R. LAWS ANN. tit. 32, App. III, Rule 44.1(d). Under this provision, a losing party who has been "obstinate" during the course of a lawsuit or who has engaged in frivolous litigation can be held liable for its adversary's attorney fees. See De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 126 (1st Cir.1991). "A finding of obstinacy requires that the court determine a litigant to have been unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay." Id. (citing La Playa Santa Marina, Inc. v. Chris-Craft Corp., 597 F.2d 1, 7 (1st Cir.1979); Soto v. Lugo, 76 P.R.R. 416, 419 (1954)).

TDI asserts that because Colombina had agreed to abide to the Arbitrator's award, its refusal to do so merits the imposition of the attorney fees incurred in this enforcement action. However, the Court disagrees. As pointed out by Colombina in its opposition, nowhere in the arbitration agreement did it renounce or waive its lawful right to move to vacate or modify the award pursuant to the FAA. In addition, considering the amount of the award, the Court

does not consider Colombina's motion to vacate or modify such an award as "obstinate" or "frivolous" as defined by the applicable law. Accordingly, the Court, in its discretion, **DENIES** the Plaintiff's request for attorney fees.

### III. CONCLUSION

For the reasons stated above, this Court thus **GRANTS IN PART** the Plaintiff's motion for summary judgment (Docket No. 23) and **DENIES** the Defendant's motion to stay, vacate or modify arbitration award (Docket No. 29).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, December 6, 2011.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE